IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY C. HARTMAN,                                                CV 05-698-MO

          Plaintiff,                          OPINION AND ORDER

   v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

          Defendant.

   ALAN STUART GRAF
   PO Box 98
   Summertown, TN  38483

      Attorney for Plaintiff

   KARIN J. IMMERGUT
   United States Attorney
   NEIL J. EVANS
   Assistant United States Attorney
   1000 S.W. Third Avenue, Suite 600
   Portland, OR  97204-2902

   LEISA A. WOLF
   Special Assistant United States Attorney
   Social Security Administration
   701 5th Avenue, Suite 2900 M/S 901
   Seattle, WA  98104-7075

      Attorneys for Defendant

1- OPINION AND ORDER

**MOSMAN, J.,**

## INTRODUCTION

Plaintiff, Jeffrey C. Hartman (Mr. Hartman), brings this action for judicial review of a final decision of the Commissioner of Social Security, dated April 9, 2004, denying his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  42 U.S.C. §§ 1381-83f. This court has jurisdiction under 42 U.S.C. § 405(g).

Mr. Hartman applied for, and was awarded child disability benefits on February 1, 1992.  Following his 18th birthday, a routine redetermination review was conducted, and on July 19, 2000, Mr. Hartman was notified that his medical condition no longer qualified him for benefits under the adult regulations, and that his benefits would be terminated in July 2000. Mr. Hartman appealed this determination in August 2000, and a hearing was held before an Administrative Law Judge (ALJ) on June 11, 2002.  Following the hearing the ALJ issued a decision finding Mr. Hartman not disabled.  On April 2, 2003, the Appeals Council vacated the decision and remanded Mr. Hartman's case for further proceedings.  A second hearing was held on January 28, 2004, and on September 9, 2004, the ALJ again found Mr. Hartman not disabled.  Following the Appeals Council's denial of Mr. Hartman's request for review, the ALJ's September 9, 2004 decision became the final decision of the Commissioner.

Mr. Hartman was 22 years old at the time of the last hearing.  He does not have a high school diploma and has never engaged in substantial gainful activity.  He alleges that he has been continuously disabled since the date his benefits were discontinued, based on the combined effects of asthma, chronic back pain, a history of recurrent headaches, a history of Tourette's disease, depressive disorder, Asperger's disorder, oppositional defiant disorder, and a disorder of written expression.

On appeal to this court, Mr. Hartman claims the ALJ erred by (1) failing to pose a complete hypothetical question to the vocational expert (VE) at step five of the sequential evaluation; (2) failing to properly assess his residual functional capacity; (3) failing to provide legally sufficient reasons for discrediting the opinions of a psychiatrist and a psychologist regarding his mental limitations; and (4) failing to provide legally sufficient reasons for finding plaintiff's combined impairments did not meet or equal a Listed Impairment at step three of the sequential evaluation.

For the reasons that follow, the Commissioner's decision is affirmed and this case is dismissed.

## **STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th

Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

4- OPINION AND ORDER

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found Mr. Hartman had never engaged in substantial gainful activity. *See* 20 C.F.R. § 416.920(b).

At step two, the ALJ found Mr. Hartman had the following severe impairments: a history of asthma, chronic back pain, a history of recurrent headaches, a history of Tourete's disorder, a depressive disorder, Asperger's disorder, and a disorder of written expression. *See* 20 C.F.R. § 416.920(c).

At step three, the ALJ determined that Mr. Hartman's impairments did not meet or equal the requirements of a listed impairment, considered so severe as to automatically constitute disability. *See* 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

The ALJ assessed Mr. Hartman with a residual functional capacity (RFC) to perform a modified range of medium work, limited by the need for simple, routine, repetitive work involving simple work processes, well-defined work performance

5- OPINION AND ORDER

expectations and production goals, and limited contact with the public and supervisors.  *See* 20 C.F.R. §§ 419.920(e), 416.945.

At step four, the ALJ found Mr. Hartman had no past relevant work he could return to.  *See* 20 C.F.R. §§ 416.920(a)(4)(iv), (f).

At step five, however, the ALJ found Mr. Harman remained capable of performing other work existing in significant numbers in the national economy, such as janitor, room cleaner, dry cleaner helper, laundry worker, yard worker, car wash attendant and general assembly worker.  *See* 20 C.F.R. §§ 416.920(a)(4)(v), (g).

## DISCUSSION

**I. Substantial Evidence Supports the ALJ's Assessment of the Medical Evidence.**

According to Mr. Hartman, the ALJ erred by failing to give legally sufficient reasons for discrediting the opinions of Charles Nielsen, M.D., and James E. Bryan, Ph.D.

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by

substantial evidence in the record. *Id*. at 600. Further, a treating physician's opinion is given controlling weight only when his opinion is well supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 404.1527(d)(2).

### A.   Dr. Nielsen

On March 1, 2001, after treating Mr. Hartman for approximately five months, Dr. Nielsen opined that Mr. Hartman was "significantly psychiatrically impaired and cannot be gainly [sic] employed" for at least one year. Tr. 348. Dr. Nielson explained that due to impaired "organizational skills and abilities" Mr. Hartman could not perform even "the most minimal employment." *Id*.

Although Dr. Nielsen was a treating physician, his opinion was not entitled to full weight because it was contradicted by other physicians of record, and because it took the form of an improper administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). A doctor's statement about a claimant's ability to work is not a proper medical source opinion, but an administrative finding. SSR 96-5p. Disability has both a medical and vocational component. *See* 20 C.F.R. § 416.960. Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by

7- OPINION AND ORDER

a medical source that a person is unable to work is not accorded much weight.  *See* 20 C.F.R. § 416.927(e)(1).  Therefore, the ALJ could reject Dr. Nielsen's opinion for specific and legitimate reasons.

The ALJ met this standard.  He found that Dr. Nielsen provided no basis for his opinion, and that it was inconsistent with information in Mr. Hartman's contemporaneous treating records.  Tr. 24.  For instance, the ALJ noted that from December, 2000 through January, 2002, Mr. Hartman had Global Assessment of Functioning (GAF) scores ranging from 55 to 70, indicating only moderate to mild symptoms, and that in March, 2001, Mr. Hartman reported experiencing only mild depressive symptoms, was well groomed, displayed no obvious tics or unusual movements, and was busying himself with computer projects.  *Id.*  The ALJ also found Dr. Nielsen's opinion that Mr. Hartman's primary deficits were in the area of organizational skills was contradicted by the opinion of Lawrence Hipshman, M.D., who diagnosed Mr. Hartman in September, 2002, with Asperger's disorder that primarily affects social, rather than cognitive, functioning.  Tr. 17, 25.

Mr. Hartman argues that the basis for Dr. Nielsen's opinion was the psychological evaluation he conducted on October 19, 2000, and the fact that Mr. Hartman's GAF scores fell from 60 to

8- OPINION AND ORDER

50 in November, 2000.[1]  However, Dr. Nielsen's October, 2000, evaluation does not address Mr. Hartman's organizational skills. It lists his chief complaint as "depression" and recommends a plan that includes medication, vocational rehabilitation for "possible employment in the future," and a goal of obtaining his GED.  Tr. 351.  Moreover, a GAF score cannot serve as a substitute for objective medical evidence and the work-related functional assessments needed to establish disability under the Social Security Act.  A GAF score is only an estimate of a claimant's overall level of functioning.  *See* DSM-IV 30 (4th ed. 1994).  Thus, the fact that Mr. Hartman's GAF score varied from week to week between October, 2000 and March, 2001, does not support any specific work-related functional limitation in particular.

In sum, the ALJ's reasons for rejecting Dr. Nielsen's opinion were specific and legitimate.

**B.   Dr. Bryan**

On December 11, 2003, Dr. Bryan conducted a neuropsychological evaluation of Mr. Hartman at the request of Mr. Hartman's disability case worker.  Tr. 747-764.  His evaluation consisted of interviewing Mr. Hartman and his mother, administering psychological tests, reviewing a report prepared by

---

[1] Mr. Hartman's GAF score also improved during the time he was under the care of Dr. Nielsen, jumping from 45 to 60 in the span of two weeks.  Tr. 342-43.

Mr. Hartman's social security "advocate," Mr. Roger Meyer, who represented him at the hearings, and reviewing a limited number of medical records. Dr. Bryan concluded that Mr. Hartman had marked limitations in activities of daily living, social functioning, and concentration, persistence and pace. He also indicated that Mr. Hartman had experienced more than four episodes of decompensation in the 12-month period prior to assessment. Tr. 763-64.

 Dr. Bryan was not a treating psychologist; he evaluated Mr. Hartman only once. In addition, he did not have access to Mr. Hartman's complete medical record, but relied primarily on testimonial information provided by Mr. Hartman, his mother, and Mr. Meyer. Further, many of Mr. Bryan's findings were contradicted by other physician's opinions in the record. Therefore, Dr. Bryan's opinion could be rejected for specific and legitimate reasons.

 The ALJ provided several reasons for discrediting Dr. Bryan, all of which were specific and legitimate. First, he determined that Dr. Bryan's reports were corrupted by Mr. Meyer's attempt to influence his findings with personal observations and opinions Mr. Meyer was not qualified to render.[2] Tr. 25. According to Dr. Bryan's report, Mr. Meyer "provided considerable background

---

[2] The ALJ also noted that Mr. Meyer inappropriately contacted the non-partisan vocational expert prior to the second hearing in an attempt to discuss the case with her.

10- OPINION AND ORDER

records and a lengthy psychologically based observational report...[which] describes his observations of the family living environment as grossly neglected, disorganized, and dirty." Tr. 750.

Second, the ALJ found numerous inconsistencies between the statements Mr. Hartman and his mother made to Dr. Bryan and their testimony on other occasions regarding Mr. Hartman's activities of daily living. Tr. 20. For instance, the ALJ noted that Mr. Hartman's mother told Dr. Bryan that Mr. Hartman's trailer home was so badly neglected Dr. Bryan recommended that a social worker investigate the "questionably habitable conditions," (Tr. 761), whereas Mr. Hartman admitted that he regularly maintains his trailer. Tr. 95-96, 749. Mr. Hartman's mother also told Dr. Bryan that Mr. Hartman only goes fishing in fair weather, and that he never catches anything, whereas Mr. Hartman testified that he fishes regularly- as many as five times a week in the summer- in rivers and the ocean, and catches a lot of fish. Tr. 80, 749. Further, Mr. Hartman's report that he had experienced four or more episodes of decompensation the year preceding the evaluation is not supported by the record evidence, which does not even reflect one such episode. Tr. 748.

Third, in addition to these testimonial inconsistencies, the ALJ found that Dr. Bryan's assessment was unpersuasive in part because it relied on Mr. Hartman's discredited self-reports. Tr.

11- OPINION AND ORDER

21. It bears noting that Mr. Hartman does not claim the ALJ wrongly discredited his testimony. In fact, Mr. Hartman admitted on the record that he has mislead evaluators by not being completely candid to them. Tr. 77, 96.

Finally, the ALJ found that Dr. Bryan's opinion that Mr. Hartman had marked limitations in the area of concentration, persistence and pace was inconsistent with his own test results showing Mr. Hartman's attention, concentration, and psychomotor speed was average. Tr. 21, 757.

Mr. Hartman argues that Dr. Bryan's opinion was based on his own test results and observations of Mr. Hartman, which revealed that he writes at a third-grade level, has borderline money management skills, and has a disheveled, dirty, and malodorous appearance. Yet, throughout Dr. Bryan's evaluation he indicates that his conclusions are based in large part on Mr. Hartman's self-reports and his mother's reports. In fact, his rating of Mr. Hartman's "Adaptive Social Functioning" specifically states that it was performed by his mother, who rated him in the lowest range possible. Tr. 750. In any event, the ALJ provided specific and legitimate reasons for deciding that the degree of limitation assessed by Dr. Bryan was not reliable.

## II. Substantial Evidence Supports the ALJ's RFC Assessment and Vocational Hypothetical Question.

A claimant's residual functional capacity is an "assessment of an individual's ability to do sustained work-related physical

12- OPINION AND ORDER

and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. In assessing a claimant's RFC the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-5p.

Here, the ALJ assessed Mr. Hartman with the residual functional capacity to perform a modified range of medium work, limited by the need for simple, routine, repetitive work involving simple work processes, well-defined work performance expectations and production goals, and limited contact with the public and supervisors. *See* 20 C.F.R. §§ 419.920(e), 416.945.

Mr. Hartman contends the ALJ erred by failing to credit all of his limitations in assessing his RFC, and by posing an incomplete hypothetical question to the vocational expert at step five of the sequential evaluation as a result. He argues first that the ALJ should have included in the hypothetical a limitation in the ability to write, and the fact that he has poor personal hygiene. Second, he contends the ALJ erred by including the need for "limited supervisory contact" because this language is "not precise enough." Finally, Mr. Hartman argues that in any event, rather than "limited supervisory contact," he needs "constant supervisory attention," and the ALJ's failure to include this limitation in his RFC assessment and hypothetical question was error.

13- OPINION AND ORDER

I find no merit to any of these arguments. Though Mr. Hartman does not specify what evidence allegedly supports a limitation in the ability to write, the only record support for such a limitation is found in Dr. Bryan's properly discredited opinion, and in school records. No credible physician assessed a limitation in writing.

Although the record is inconsistent with respect to Mr. Hartman's grooming habits, even assuming that they are very poor, body habitus is not considered in the RFC assessment. SSR 96-8p. The RFC considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. Accordingly, the ALJ properly excluded from the RFC assessment limitations relating to Mr. Hartman's hygiene.

Finally, Mr. Hartman contends that the "vocational and medical records fail to support the residual functional capacity found by the ALJ with respect to limited supervisory contact," therefore the ALJ should have included the need for constant supervision in his RFC assessment. I disagree. The ALJ included limited contact with the public and supervisors because disability determination services consultant Bill Hennings, Ph.D., found Mr. Hartman had moderate limitations in the ability to interact appropriately with the public. Tr. 24, 169. No treating or examining physician assessed Mr. Hartman with the

14- OPINION AND ORDER

need for constant supervision. Mr. Hartman argues that support for this limitation is found in his former employer's opinion that he needed constant supervision. However, this lay witness opinion does not constitute acceptable medical evidence upon which a RFC limitation may be premised.

In sum, I find the ALJ properly included in his RFC assessment all limitations supported by substantial evidence in the record. Further, the ALJ properly recited Mr. Hartman's RFC in his hypothetical question to the vocational expert at step five of the sequential evaluation. Tr. 57-58.

### III. Substantial Evidence Supports the ALJ's Finding that Mr. Hartman's Combined Impairments Do Not Meet or Equal a Listed Impairment.

According to Mr. Hartman, the ALJ failed to adequately consider whether his impairments equaled a Listed Impairment considered so severe as to automatically constitute disability. *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). He contends, without argument, that he meets the criteria for Listed Impairment 12.10, for autistic disorder and other pervasive developmental disorders.

A social security claimant bears the burden of proving his impairment(s) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to

15- OPINION AND ORDER

any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id*.

In this case, Dr. Bryan opined that Mr. Hartman's impairments met the "B" and "C" criteria of Listed Impairments 12.04, 12.06 and 12.10. Tr. 20. Therefore, the ALJ considered whether Mr. Hartman's impairments, singly or in combination, met or equaled the criteria for any Listed Impairment, and concluded that they did not. He wrote,

> The psychological reports of record reveal the claimant has a disorder of written expression under section 12.02, some intermittent depression and anxiety under sections 12.04 and 12.06 respectively, and Asperger's syndrome under listing 12.10. A review of the "B" criteria, however, indicates that the functional limitation categories are not manifested at a degree which satisfies the full requirements of such listing.

Tr. 19.

I find this evaluation adequate in light of the fact that the only evidence supporting Mr. Hartman's equivalency theory consisted of a properly discredited psychologist's opinion.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this  27th  day of June, 2006.

                              /s/ Michael W. Mosman     
                             Michael W. Mosman
                             United States District Judge